Gayl BLOUNT, Plaintiff,

v.

STERLING HEALTHCARE GROUP, INC., a Florida Corp., and Stephen J. Dresnick, Defendants.

No. 95–2881–CIV.

United States District Court, S.D. Florida.

May 28, 1996.

Kimberly Lynn Boldt, Russo, Talisman & Moylan, P.A., Coconut Grove, FL, for Gayl Blount.

Susan Potter Norton, Dena Holly Sokolow, Hogg, Allen, Norton & Blue, P.A., Coral Gables, FL, for Sterling Healthcare Group, Inc.

Dena Holly Sokolow, Hogg, Allen, Norton & Blue, P.A., Coral Gables, FL, for Stephen J. Dresnick.

### ORDER ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION

UNGARO–BENAGES, District Judge.

THIS CAUSE came before the Court upon Defendant's Partial Motion to Dismiss Counts I and II as to Defendant Dresnick, Count III as to Defendant Sterling, Count IV as to both Defendants, and Motion to Strike and/or Dismiss the Demand for Punitive Damages in Counts III and IV of Plaintiff's First Amended Complaint (D.E. 9).

THE MATTER was referred to the Honorable Barry L. Garber, United States Magistrate Judge. A Report and Recommendation dated April 19, 1996 has been filed, recommending that Defendant's Motion to Dismiss Counts I and II as to Dresnick be

Granted; Defendant's Motion to Dismiss Count IV be Granted as to both Defendants; Defendants' Motion to Dismiss Count III as to Sterling be Denied; and Defendants' Motion to Dismiss the Claim for Punitive Damages be Denied. No Objections to the Magistrate Judge's Report and Recommendation have been filed. This matter is ripe for disposition.

THIS COURT has made a *de novo* review of the entire file and record herein, and being otherwise fully advised in the premises, it is

ORDERED and ADJUDGED that United States Magistrate Judge Garber's Report and Recommendation of April 19, 1996 is RATIFIED, AFFIRMED and ADOPTED as discussed below. Plaintiff has filed a cause of action against the defendants alleging sexual harassment under Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e, et seq. (Count I) and Chapter 760 of the Florida Civil Rights Act of 1992 (Count II), state tort claims for assault and battery (Count III) and intentional infliction of emotional distress (Count IV) on the theory of respondeat superior. Blount seeks compensatory and punitive damages on all counts.

Defendants filed this Motion to Dismiss pursuant to Fed.R.Civ.Pro. 12(b)(6) alleging failure to state a cause of action on the grounds that Title VII and the Florida Civil Rights Act do not create causes of action against individual employees for sexual harassment (Counts I and II), that the alleged acts committed by Dresnick were not within the scope of his employment and therefore cannot serve as the basis for respondeat superior liability (Counts III and IV), and that the conduct alleged does not rise to the level of "outrageousness" necessary for a cause of action for intentional infliction of emotional distress under Florida law. Defendants further seek to strike and/or dismiss Blount's claim for punitive damages in Counts III and IV as the allegations in the Complaint do not comply with the pleading requirements of Fla.St. § 768.72.

The Magistrate Judge found that Title VII does not create a cause of action against individual employees such that Dresnick may not be held individually liable under Title VII

and recommended that Count I be dismissed as against Dresnick. The Magistrate Judge further found that, like Title VII, the Florida Civil Rights Act does not create a cause of action against individual employees such that Dresnick may not be held individually liable under the Act and recommended that Count II be dismissed as against Dresnick. The Magistrate Judge further found that, accepting Plaintiff's allegations as true, Plaintiff has sufficiently stated a cause of action against Defendant Sterling for respondeat superior liability such that Count III should not be dismissed as against Sterling. The Magistrate Judge further found that the conduct alleged, although unacceptable and actionable in other respects, does not rise to the level of sufficiently outrageous conduct to support a cause of action for intentional infliction of emotional distress and recommended that Count IV be dismissed as to both defendants. Finally, the Magistrate Judge found that Florida Statute § 768.72 is procedural and therefore is inapplicable to Plaintiff's claims for punitive damages such that the claims should not be stricken or dismissed.

Upon review of the relevant statutes and case law as they pertain to the record herein, this Court agrees with the findings of the Magistrate Judge. Accordingly, it is hereby

ORDERED AND ADJUDGED as follows:

Defendants' Motion to Dismiss Counts I and II as to Dresnick is GRANTED;

Defendants' Motion to Dismiss Count IV is GRANTED as to both Defendants;

Defendants' Motion to Dismiss Count III as to Sterling is DENIED; and

Defendants' Motion to Dismiss and/or Strike Plaintiff's claims for Punitive Damages is DENIED.

## *REPORT AND RECOMMENDATION*

GARBER, United States Magistrate Judge.

THIS CAUSE is before the Court pursuant to an Order of Reference entered by the Honorable Ursula Ungaro–Benages, United States District Judge. The following Report and Recommendation is hereby submitted on

Defendants' Partial Motion to Dismiss Counts I and II as to Defendant Dresnick, Count III as to Defendant Sterling, Count IV as to both Defendants, and Motion to Strike and/or Dismiss the Demand for Punitive Damages in Counts III and IV of Plaintiff's First Amended Complaint. (DE 9).

### BACKGROUND

On December 27, 1995, Plaintiff Gayl Blount ("Blount") filed a Complaint in the United States District Court for the Southern District of Florida against Defendants Sterling Healthcare ("Sterling") and Stephen Dresnick ("Dresnick"), President of Sterling. (DE 1). Blount then filed her First Amended Complaint (DE 4) on January 11, 1996, alleging sexual harassment claims against both Defendants under Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.* (Count I) and Chapter 760 of the Florida Civil Rights Act of 1992 (Count II). Blount also alleges state law tort claims of Assault and Battery (Count III) and Intentional Infliction of Emotional Distress (Count IV) against Dresnick and against Sterling on the theory of respondeat superior liability. In all of the above counts, Blount requests compensatory and punitive damages.

In her Amended Complaint, Blount alleges that she was subject to sexual harassment by Dresnick in the form of Dresnick hugging and refusing to release her in spite of her resistance, rubbing her breasts with the back of his arm repeatedly, and making sexually explicit jokes and suggestive comments to her. Blount alleges that she informed Dresnick that his comments and behavior were not welcomed, but the alleged harassment continued. On March 27, 1995, Blount was terminated from her employment with Sterling, which she claims was a result of her confronting Dresnick about his behavior.

On January 23, 1996, Sterling and Dresnick filed their Partial Motion to Dismiss Blount's Amended Complaint (DE 9) for failure to state a claim under Fed.R.Civ.P. 12. Defendants claim that Counts I and II should be dismissed as to Dresnick, as neither Title VII nor the Florida Civil Rights Act ("Florida Act") creates a cause of action against individual employees for sexual harassment.

Defendants further seek dismissal of Counts III and IV as to Sterling on the ground that the alleged misconduct was not committed by Dresnick within the scope of his employment, and thus there can be no respondeat superior liability. Defendants also claim that Count IV should be dismissed in its entirety, as the conduct complained of, even if true, does not rise to the level of "outrageousness" necessary to state a claim for the tort of intentional infliction of emotional distress under Florida law. Lastly, Defendants seek to strike and/or dismiss Blount's claim for punitive damages in Counts III and IV, as the allegations in Blount's Amended Complaint do not comply with the pleading requirements of Florida Statute § 768.72.

On February 23, 1996, Blount filed a Response to the Partial Motion to Dismiss (DE 16), to which Defendants replied on March 11, 1996. (DE 23). A hearing on said motions was held before the undersigned on March 19, 1996.

### DISCUSSION

### I. STANDARD OF REVIEW

 To state a claim, Fed.R.Civ.P. 8(a) requires, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." The Court must "take the material allegations of the complaint and its incorporated exhibits as true, and liberally construe the complaint in favor of the plaintiff." *Burch v. Apalachee Community Mental Health Services, Inc.,* 840 F.2d 797, 798 (11th Cir.1988), *aff'd sub nom., Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). The law in this Circuit is well-settled that "the 'accepted rule' for appraising the sufficiency of a complaint is 'that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *SEC v. ESM Group, Inc.,* 835 F.2d 270, 272 (11th Cir. 1988), *cert. denied sub nom., Peat Marwick Main & Co. v. Tew,* 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

## II. TITLE VII DOES NOT CREATE A CAUSE OF ACTION AGAINST INDIVIDUAL EMPLOYEES

■ In Count I of Blount's Amended Complaint, she seeks damages under Title VII against Sterling as an employer and against Dresnick both in his individual capacity and as an agent of Sterling. Dresnick argues that Count I should be dismissed against him because Title VII does not create a cause of action against employees. In *Busby v. City of Orlando*, the Eleventh Circuit Court of Appeals held a similar individual capacity suit under Title VII inappropriate. 931 F.2d 764, 772 (11th Cir.1991). "The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act." *Id. Busby* was later quoted in *Cross v. State of Alabama*, where the Eleventh Circuit again held that individual capacity suits were not permitted under Title VII. 49 F.3d 1490 (11th Cir.1995), *reh'g denied*, 59 F.3d 1248 (11th Cir.1995). " 'We think the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly.' " *Id.* at 1504 (quoting *Busby*, 931 F.2d at 772); *see also Albert v. National Cash Register Co.*, 874 F.Supp. 1328, 1330 (S.D.Fla.1994) (holding that no individual liability is created by Title VII).

■ Blount argues that whether such suits are appropriate is an open question of law, as other circuits have held individual capacity suits to be valid under Title VII. *See Jones v. Continental Corp.*, 789 F.2d 1225 (6th Cir. 1986). However, the statutory scheme indicates Congress did not intend for individual employees to be liable. Title VII limits liability to employers with fifteen or more employees,[1] "in part because Congress did not want to burden small entities with the costs associated with litigating discrimination claims. If Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees." *Miller v. Maxwell's Intern, Inc.*, 991 F.2d 583, 587 (9th Cir.1993), *cert. denied sub nom. Miller v. LaRosa*, 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994). In light of these policy considerations, as well as the well-settled law of this jurisdiction, Dresnick may not be held individually liable under Title VII. Therefore, Count I should be dismissed as to Dresnick.

## III. DRESNICK IS NOT INDIVIDUALLY LIABLE UNDER THE FLORIDA CIVIL RIGHTS ACT

■ Dresnick next claims that because the Florida Act is modeled after Title VII, and although there have been no cases on individual liability under the Act, the Florida Statute should take on the same construction as given to its federal prototype. Fla. Stat. § 760.10(1)(a) states:

(1) It is an unlawful employment practice for an employer: (a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's ... sex. ...

The statute in § 760.03 creates a Commission on Human Relations, and goes on to state in the section entitled **Administrative and civil remedies; construction.—**

(1) Any person aggrieved by a violation of §§ 760.01–760.10 may file a complaint with the commission within 365 days of the alleged violation, naming the employer, ... and describing the violation. ...

(3) Within 180 days of the filing of the complaint, the commission shall determine if there is reasonable cause to believe that a discriminatory practice has occurred in violation of the Florida Civil Rights Act of 1992.

(4) In the event the commission determines that there is reasonable cause to believe that a discriminatory practice has occurred in violation of the (Act), the aggrieved person may ...

1. Title VII defines "employer" as: [A] person engaged in any industry affecting commerce who has fifteen or more employees ... and any agent of such a person, .... 42 ·U.S.C. § 2000e(b) (1994).

(a) Bring a civil action against the person named in the complaint in any court of competent jurisdiction; ....

Fla. Stat. § 760.11. The plain reading of this statute shows that in order to bring a civil claim under it, the aggrieved party must first file a complaint with the commission, who then has the responsibility of issuing a reasonable cause determination. *Williams v. Eckerd Family Youth Alternative*, 908 F.Supp. 908, 910 (M.D.Fla.1995) (plaintiffs could not seek relief under the Act prior to filing a charge of discrimination with the commission); *see also Zarnick v. Painewebber, Inc.*, No. 95–138–Civ–FTM–17, 1995 WL 631821, *1 (M.D.Fla. Oct. 24, 1995) (where the plaintiff had filed a complaint with the commission but the commission had not yet issued a reasonable cause determination, the plaintiff was unable to include a claim under the Act in her civil case). Here, Blount has not alleged that she has filed such a complaint and that a reasonable cause determination has been issued. Therefore, if Blount neglected to file such a complaint, she is unable to bring a claim in this Court under the Act.[2]

■ Even if Blount filed a complaint with the commission and had been issued a reasonable cause determination, she would still be unable to recover under the Act against Dresnick individually. Fla. Stat. § 760.02(7) defines "employer" in substantially the same language as is used in the federal definition.[3] In addition, many other provisions of the Act and Title VII are also worded almost identically, indicating a legislative intention to model the Florida Act after the Federal provisions. Florida courts have held that when a Florida statute is modeled after a federal law on the same subject, the Florida statute should be interpreted in the same way as its federal prototype. *Brand v. Florida Power Corporation*, 633 So.2d 504 (Fla. 1st DCA 1994). In a similar case, the Middle District of Florida held that in light of the wording of § 760.10 and Title VII being almost identical,

and "in the absence of a contrary interpretation of the statute by a Florida court", it would follow Title VII jurisprudence and strike a claim against a supervisor in his individual capacity. *Urquiola v. Linen Supermarket, Inc.*, No. 94–14–Civ–Orl–19, 1995 WL 266582, at *2 (M.D.Fla. March 23, 1995). *See also Albert*, 874 F.Supp. at 1330 (Florida Civil Rights Act claims against individual employees must fail to the extent the Title VII claims against the same employees fail). Therefore, Blount's claims against Dresnick under the Florida Act must fail.

## IV. BLOUNT'S COMPLAINT DOES NOT STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ Sterling and Dresnick both seek to dismiss Count IV in its entirety, arguing the alleged conduct was not egregious enough to state a claim for intentional infliction of emotional distress. In *Metropolitan Life Ins. Co. v. McCarson*, the Florida Supreme Court officially recognized the tort of intentional infliction of emotional distress, and adopted the definition set out in the Restatement of Torts § 46. 467 So.2d 277, 278–79 (Fla.1985). The claim requires deliberate or reckless infliction of severe mental suffering caused by outrageous conduct. *Id.* at 278. Often whether a complaint states a claim or not will depend on whether the conduct was sufficiently outrageous. "Outrageous" conduct is defined as that which goes beyond all possible bounds of decency, and is intolerable in a civilized community. *Id.* The question of whether a defendant's conduct rises to this level is a question of law for the court. *Vance v. Southern Bell Telephone and Telegraph*, 983 F.2d 1573, 1575 n. 7 (11th Cir.1993).

Courts in Florida and in the Eleventh Circuit have been extremely reluctant to recognize outrageous conduct in the employment context. *See Studstill v. Borg Warner Leas-*

---

2. The plain wording of the statute limits complainants to 365 days after an alleged violation within which to file a complaint with the commission. Fla.Stat. § 760.11(1). As the alleged harassment occurred in March, 1995, if Blount has not already filed such a complaint, she may no longer do so.

3. *See supra* Part I for the Title VII definition of "employer".

*ing,* 806 F.2d 1005, 1008 (11th Cir.1986) (verbal sexual harassment, including dirty jokes, comments and invitations, was insufficient to support an intentional infliction of emotional distress claim); *Watson v. Bally Manufacturing Corp.,* 844 F.Supp. 1533, 1537 (S.D.Fla.1993) (verbal sexual harassment did not rise to the level necessary to support the claim for intentional infliction of emotional distress); *Golden v. Complete Holdings, Inc.,* 818 F.Supp. 1495, 1499 (M.D.Fla.1993) (employer firing employee without warning after representing that it would not do so, and refusing to pay severance pay, was not sufficiently outrageous conduct in light of the high standard of outrageousness); *Ponton v. Scarfone,* 468 So.2d 1009, 1011 (Fla. 2d DCA 1985), *rev. denied,* 478 So.2d 54 (Fla.1985) (sexual suggestions and invitations were not sufficiently outrageous).

Blount claims that in most of the cases where employment-related sexual harassment was insufficient to state a claim for intentional infliction of emotional distress, the alleged conduct involved *verbal* sexual harassment only, and that where *physical* harassment is involved, as here, it is much easier to withstand a motion to dismiss and/or to ultimately recover. *See Vernon v. Margate,* 912 F.Supp. 1549 (S.D.Fla.1996); *Urquiola,* 1995 WL 266582; *Stockett v. Tolin,* 791 F.Supp. 1536 (S.D.Fla.1992). However, these cases are distinguishable from the instant case in that the physical sexual harassment involved in all of them was much more severe and pervasive than that involved here. In *Vernon,* the alleged conduct included repeated touching on the buttocks and breasts, repeatedly squeezing the employee's nipples, touching employee's belly button, blowing on her neck, tickling, and picking up her legs so as to look up her skirt. *Vernon,* 912 F.Supp. at 1560. The court stated it was unwilling to hold as a matter of law that such persistent verbal and physical harassment was insufficient to withstand the motion to dismiss. *Id.* "If established to be true, [defendant's] conduct clearly constitutes the kind of behavior that is atrocious and utterly intolerable in a civilized community." *Id.* In *Urquiola,* the alleged conduct included repeatedly kissing and groping the employee, and an attempted rape that was only pre-

vented by the arrival of another employee. *Urquiola,* 1995 WL 266582, at *4. In *Stockett,* where the plaintiff/employee ultimately recovered on the claim, the alleged conduct included the supervisor's touching the employee's buttocks and breasts several times a week, sticking his tongue in her ear and requesting oral sex, spying on her in the restroom, threats to fire the employee if she did not sleep with him, and a physical attack which almost became a rape but was interrupted by another employee. *Stockett,* 791 F.Supp. at 1541-43.

Here, the physical harassment Blount alleges was the tight "hugging" by Dresnick, who on one occasion refused to let go, several instances where he rubbed her breasts with his arm, and one instance where he massaged the back of her head. The other alleged conduct consisted of verbal harassment, including telling sexually and racially explicit jokes and making suggestive comments to Blount. This conduct, although certainly unacceptable and actionable in other respects, does not rise to the level of that in the above cases which could be considered sufficiently outrageous to support a claim for intentional infliction of emotional distress. This is true especially in light of recent Florida cases involving both physical and verbal harassment of a similar nature to that alleged here, where courts have followed the general Florida precedent and shown disfavor for the claim. *See Howry v. Nisus, Inc.,* 910 F.Supp. 576, 580-81 (M.D.Fla.1995) (holding that an employer physically touching both employees and himself in a suggestive manner, using obscene language, and commenting on sex organs, was insufficient under Florida law to state a claim for intentional infliction of emotional distress); *Hayes v. Liberty National Life Insurance Co.,* No. 94-425-Civ-J-10, 1995 WL 500896, at *1, 4 (M.D.Fla. Aug. 4, 1995) (where supervisor hugged plaintiff several times, tried to kiss her, told others she was sleeping with him, and made other sexually oriented statements to her, the court granted summary judgment for defendant to the extent the motion addressed the claim for intentional infliction of emotional distress). Therefore, Blount has not stated a claim for this tort.

**1372**

### V. THE ISSUE OF STERLING'S LIABILITY FOR DRESNICK'S ALLEGED ACTS SHOULD NOT BE DISMISSED

 Under Florida law, in order for an employer to be liable under the theory of respondeat superior for the intentional torts of an employee, the alleged wrongs must be committed within the real or apparent scope of the employer's business. *City of Miami v. Simpson,* 172 So.2d 435, 437 (Fla.1965). Whether the conduct was within the scope of the business is determined by considering if the conduct is the kind the employee is hired to perform, if it occurs within the time and space limits of the job, and if it is activated at least in part to serve the master. *Liberty Mutual Insurance Co. v. Electronic Systems, Inc.,* 813 F.Supp. 802, 806 (S.D.Fla.1993); *Caprio v. American Airlines, Inc.,* 848 F.Supp. 1528, 1532 (M.D.Fla.1994). The employer is not liable for the employee's torts if the employee has stepped aside from his employment or commits the tort to further some purpose of his own; however, if the tort is activated at least partly to serve the master, then respondeat superior liability may exist. *City of Miami,* 172 So.2d at 437. This is true even if the alleged wrong was a crime, was not authorized by the employer, or was forbidden by the employer. *Stinson v. Prevatt,* 94 So. 656 (Fla.1922); *Lay v. Roux Laboratories, Inc.,* 379 So.2d 451, 453 (Fla. 1st DCA 1980). Whether an employee's acts are within the scope of employment is to be determined by the jury unless they could conceivably only reach one conclusion. *City of Green Cove Springs v. Donaldson,* 348 F.2d 197, 202 (5th Cir.1965).

Sterling argues in its Partial Motion to Dismiss that in this particular instance, whether the intentional torts were committed within the scope of employment is a question of law for the court, as "Plaintiff has alleged no possible basis by which any of the alleged intentional tortious acts of Dresnick can be deemed to further the interests of Defendant Sterling," nor are they of the type Dresnick was hired to perform. (DE 9 at 5). Blount

contends that the acts were committed during working hours on business premises, and "in the context of [Dresnick's] position as Blount's supervisor".[4] (DE 16 at 6).

Many of the Florida cases which Sterling cites where courts as a matter of law found that an employee had stepped aside from his work and so liability could not exist are distinguishable from this case. In *Johnson v. Gulf Life Insurance Co.,* an employer was sued for an accident caused by his employee while driving home drunk from a bar. 429 So.2d 744 (Fla. 3d DCA 1983). The employee had been conducting some business at the bar, but at the time of the accident was on his way to another bar for a purely social engagement. *Id.* at 747. Thus, the court easily concluded that the employee had stepped away from his work at the time of the accident. *Id. See also Liberty Mutual,* 813 F.Supp. at 803–804 (holding that an employee on a business trip had distinctly departed from his work duties and therefore as a matter of law no respondeat superior liability existed when the employee had finished his business on Saturday before returning to work on Monday, and had been drinking at a topless bar prior to a car accident on Saturday night); *Sussman v. Florida East Coast Properties, Inc.,* 557 So.2d 74, 75–76 (Fla. 3d DCA 1990) (employer as a matter of law not liable for negligence of employee when on way to work employee was picking up a birthday cake for a fellow worker and was involved in accident; employee stated she was picking up the cake as a friend, not because the employer asked her to), *rev. denied,* 574 So.2d 143 (Fla.1990).

Defendants also cite to *Jones v. City of Hialeah,* where a civilian confidential informant was involved in an altercation with a suspect after an unsuccessful arranged drug bust. 368 So.2d 398, 400 (Fla. 3d DCA 1979), *cert. denied,* 378 So.2d 346 (Fla.1979). The informant shot the suspect, who then sued the informant and the city. *Id.* The Court concluded as a matter of law that the city could not be held liable because the infor-

---

4. As the undersigned recommends that Count IV be dismissed as to both defendants, Assault and Battery is the only remaining state law claim for which Sterling may be liable through respondeat superior. Therefore, the remaining pages will refer only to Sterling's potential liability for Assault and Battery.

mant's assignment had been terminated, all officers had departed from the area, and so there was no longer an agency relationship between the city and the informant. *Id.* at 401. The above cases all describe situations where the employees were not on business premises, were not on business time, and where the torts did not occur while the employees were engaged in any work-related activities.

In other Florida cases where the issue of respondeat superior liability has gone to the jury, including those involving sexual harassment, the employee's torts have been committed while at work and on the time clock. In *Caprio,* where a woman accused her supervisors of sexual harassment while at work and sued for intentional torts, the Court determined that the question of whether the acts were committed within the scope of employment was a question best submitted to the jury. *Caprio,* 848 F.Supp. at 1532. *See also Dibernardo v. Waste Management, Inc. of Florida,* 838 F.Supp. 567, 570 (M.D.Fla. 1993) (on similar facts the court submitted the question of employer liability to the jury); *Gonpere Corp. v. Rebull,* 440 So.2d 1307, 1308 (Fla. 3d DCA 1983) (the question of whether an apartment manager who shot a tenant after an argument over an eviction was acting within the scope of his employment was submitted to the jury).

In the recent case of *Vernon* out of this Court, the plaintiff brought a claim for battery and intentional infliction of emotional distress arising out of alleged sexual harassment committed by her supervisor at work. *Vernon,* 912 F.Supp. at 1552. In her complaint, the plaintiff alleged that the supervisor was acting within the scope of his employment when he harassed the plaintiff, and that it was done to advance the interests of the employer. *Id.* Judge Marcus held that in light of the claims that the touchings were committed within the scope of the supervisor's employ, dismissal of the claim was inappropriate, as "all well-pleaded allegations must be accepted as true." *Id.*

 Here, Blount has alleged that Dresnick was acting as her supervisor during work hours and on work premises, and so in the scope of his employ when the alleged

torts were committed. In light of the factual similarity between this case and cases such as *Caprio, Dibernardo,* and *Vernon,* where the issue of employer liability went to the jury, and the factual dissimilarity to cases where the issue was decided as a matter of law, the question of Sterling's potential liability for Dresnick's alleged assault and battery is a question of fact best decided by a jury. In accepting Blount's allegations as true, she has sufficiently stated a cause of action against Sterling for respondeat superior liability.

## VI. FLORIDA STATUTE § 768.72 IS INAPPLICABLE

Defendants claim that under Florida's statute regarding the pleading of punitive damages in civil actions, Blount has not provided sufficient facts in the record to establish entitlement to such damages. Fla.Stat. § 768.72 (1995) states in part:

> In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages.... The rules of civil procedure shall be liberally construed so as to allow the claimant discovery of evidence which appears reasonably calculated to lead to admissible evidence on the issue of punitive damages. No discovery of financial worth shall proceed until after the pleading concerning punitive damages is permitted.

This is in contrast to Fed.R.Civ.P. 8(a), which simply requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The question then becomes which provision should be applied to the pleadings in federal court.

 In a diversity action, federal courts are directed to apply state substantive law and federal procedural law. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The determination of what is considered "substantive" and what is "procedural" was clarified in *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), which states that if a state provision

directly conflicts with a Federal Rule of Civil Procedure, then the federal court must apply the federal rule.[5] If there is no conflict, the court must then apply an *Erie* analysis, where application of the federal rule is called for unless to do so would lead to forum shopping or inequitable administration of the laws. *Hanna,* 380 U.S. at 468, 85 S.Ct. at 1142.[6]

In *State of Wisconsin Investment Board v. Plantation Square Associates, Ltd.,* this Court held under this analysis that Fla.Stat. § 768.72 irreconcilably conflicted with Fed. R.Civ.P. 8(a), and therefore was not applicable in federal court. 761 F.Supp. 1569, 1576 (S.D.Fla.1991).

> [The statute] obviously requires much more than a mere "short and plain statement" for establishing a punitive damage claim in that it necessitates 1) the presentation of evidence ... that there exists a reasonable basis for a punitive damage claim and 2) court review and determination that Plaintiff's evidentiary proffer meets the statute's "reasonable basis" standard.... To apply § 768.72 in federal courts would, in essence, convert the pleading of punitive damages from the requirement of mere notice to a quasi-adjudication of plaintiff's claim, requiring evidentiary inquiry and discovery, argumentation of counsel, and a judicial ruling.

*Id.* at 1574. The court further stated that even if there was no direct conflict under *Hanna* between the statute and Fed.R.Civ.P. 8(a), then under an *Erie* analysis, there was also no danger of inequitable administration of the laws nor a danger of forum-shopping with the application of the Federal Rule. *Id.* at 1576.

The majority of judges in the Southern District of Florida agree with this view, and have held that when the Florida provision conflicts with a Federal Rule of Civil Procedure, the Federal Rule is applicable. *See Burger King Corp. v. Austin,* 805 F.Supp. 1007, 1025 n. 30 (S.D.Fla.1992) (§ 768.72 is inapplicable in federal diversity actions); *Kingston Square Tenants Association v. Tuskegee Gardens, Ltd.,* 792 F.Supp. 1566, 1579 (S.D.Fla.1992) ("[T]he majority of judges in the Southern District of Florida (agree) that § 768.72 is a pleading statute inapplicable to Florida state law claims being litigated in federal court"); *AmeriFirst Bank v. Bomar,* 757 F.Supp. 1365, 1378 (S.D.Fla. 1991) (holding that the state provision was procedural in nature and conflicted with Fed. R.Civ.P. 9(g), and that therefore, the federal rule must be applied in lieu of the state rule); *In re Sahlen Assoc., Inc. Secur. Litigation,* 773 F.Supp. 342, 375 (S.D.Fla.1991) (pleading in federal court is governed by FRCP 8(a)); *Jones v. Wal-Mart Stores, Inc.,* No. 90-14113-Civ, 1991 WL 236503 (S.D.Fla. April 25, 1991) (§ 768.72 is procedural); *Benjamin Geisinger v. Armstrong World Indus.,* No. 90-0872-Civ, 1990 WL 120749 (S.D.Fla. Aug. 10, 1990) (§ 768.72 is a non-substantive pleading statute); *Citron v. Armstrong World Industries,* 721 F.Supp. 1259 (S.D.Fla. 1989) (finding the Florida statute to be procedural as it conflicted with Fed.R.Civ.Proc. 9(g) and so applying the federal rule).

Dresnick and Sterling argue that several cases from the Middle District and one case from the Southern District have held § 768.72 to be substantive. *See, e.g., Al-Site,* 842 F.Supp. at 509–10;[7] *Marcus v.*

---

**5.** This is assuming that the Federal Rule meets the second part of the *Hanna* analysis: It must not be beyond the scope of the Rules Enabling Act or otherwise unconstitutional. 380 U.S. at 470–71, 85 S.Ct. at 1143–44.

**6.** The Florida Supreme Court has held that § 768.72 creates a substantive right "not to be subject to a punitive damages claim and ensuing financial worth discovery until the trial court makes a determination that there is a reasonable evidentiary basis for recovery of punitive damages". *Globe Newspaper Co. v. King,* 658 So.2d 518 (Fla.1995). However, the Florida Supreme Court has never determined the provision to be

"substantive" in the *Erie* sense, nor could it have, as it is the job of federal courts to be the "final arbiter(s) of federal law, a role which cannot be usurped by the state courts." *Al-Site Corp. v. VSI Intern, Inc.,* 842 F.Supp. 507, 510 (S.D.Fla. 1993).

**7.** Defendants pointed out at the hearing held before the undersigned that the court in *Al-Site* found § 768.72 to be substantive partly because of 1993 Amendments to the General Provisions Governing Discovery, Fed.R.Civ.P. 26. *Al-Site,* 842 F.Supp. at 512–13. The court there found no direct conflict between § 768.72 and 8(a), and continuing its analysis under *Erie,* decided that

*Carrasquillo,* 782 F.Supp. 593, 600 (M.D.Fla. 1992). However, in light of the persuasive analysis in *Plantation,* and the strong inclination in this District to hold § 768.72 procedural, the undersigned finds that in the instant case § 768.72 is inapplicable to Blount's claim for punitive damages in Count III. Therefore, Defendants' Motion to Strike and/or Dismiss the Demand for Punitive Damages must be denied.

### CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned hereby RECOMMENDS as follows:

1) Defendants' Motion to Dismiss Counts I and II as to Dresnick be GRANTED;

2) Defendants' Motion to Dismiss Count IV be GRANTED as to both Defendants;

3) Defendants' Motion to Dismiss Count III as to Sterling be DENIED; and

4) Defendants' Motion to Dismiss the Claim for Punitive Damages be DENIED.

The parties have ten (10) days from the date of this Report and Recommendation within which to file written objections, if any, with the Honorable Ursula Ungaro–Benages, United States District Judge. *See* 28 U.S.C. § 636 (1991). Failure to file timely objections may bar the parties from attacking the factual findings contained herein. *LoConte v. Dugger,* 847 F.2d 745, 750 (11th Cir.), *cert. denied,* 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386.

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida, this 19th day of April, 1996.

the recent Amendments made forum-shopping more likely and so violated the *Erie* test, and therefore determined the Florida provision was substantive. *Id.* However, even if forum-shopping *may be* more likely post–1993 so as to subvert the aims of *Erie,* this court agrees with the majority of the Southern District cases that there *is* a direct conflict under *Hanna* and holds § 768.72 procedural for this reason, without reaching the *Erie* analysis. Therefore, the 1993 Amendments do not alter the result.